Good morning, Your Honors. My name is Kevin Gill and I represent UNUM Life Insurance Company, the appellant in this matter. The issue on appeal here is relatively discreet. It is one of contract interpretation. UNUM is here because the District Court's construction of the Nevada Western Long-Term Disability Income Plan creates internal conflicts where none should exist and leads to an absurd result where a claimant who has been disabled can get around the policy's requirement to continue to seek regular care from a physician simply by claiming that they are now partially disabled. What would happen in a case where, well, it's not infrequent, sometimes the doctor tells you there's nothing more we can do, you'll just have to learn to live with it. Do you have to keep going to the doctor and getting treatment anyway to get your disability? The policy has a little bit more of a complex relationship to that question because there is a two-year ONOC disability and then there becomes, the rest is any occupation disability. So if, say, you were a bus driver and you lost your ability to see, you certainly could not be a bus driver anymore. So for two years, you know, you would not have to do anything. But once you get beyond that two years, if you can find, if you can get a job where... I must not have made my question clear. I was asking about proof required of continuing medical care, and you were talking about the extensive disability. What I want to know about is in a case where a doctor says there's nothing more we can do, there's no point getting further medical care because there's nothing we can do, do you still have to get continuing medical care to get your disability? You would still need to have regular medical care, Your Honor. What care when the doctor's told you there's nothing we can do? It would just be to manage your disability. Regular medical care is something that people have, you know, whether... There are a lot of things where there's no regular. I guess a dramatic case would be you lose both legs, fall under a trolley, lose both legs. They can't put them back on, and they can diddle around all they want, and you're still not going to get them back. That's a dramatic case, but there are a lot of less visible ones where basically that's what the doctors say, nothing we can do. Yes, Your Honor. And the policies would still require regular medical care. It may not be towards what medical care where there's nothing they can do? To sort of maintain your present state of functionality to try to perhaps build up different areas of functionality. Enough to just get a report once a year from the doctor, I told him a year ago there was nothing we could do, and it's still true? Or would you have to get some kind of care? Yes, Your Honor. If the doctor is still seeing you once a year and says, you know, these still cannot work, then that would satisfy the policies requirement. There is no requirement that you pursue aggressive treatment. There is no requirement that you take outlandish steps. There's just a simple requirement that in order to continue to receive benefits, that you continue to show that you're disabled. And it's a minor requirement, and it's just the benefit of the bargain, that that way the insurance company is getting some, you know, indication that benefits should still be paid, that the claim is still valid. It's a very minor requirement. One thing I didn't understand about your analysis of the contract, which was a fairly confusing contract, but you seem to be saying that the definition of disability includes the concept of partial disabilities, because the disability, you understand the insured cannot perform each of the material duties of his regular occupation, meaning he can't perform each one of those. And then there is a sliding scale for if you're still making some income, then you get less benefits. Doesn't that read the definition of partial disability out of the contract, or is there some meaningful way that partial disability is used in the contract? I couldn't really see it under your definition. The way that the contract is constructed is there is sort of one definition of, there is one disability coverage. And in order to get coverage, you have to be disabled for 90 days minimum. And once you've been disabled, if you start to go back to work, or if you can start to go back to work, you are still considered disabled, but you are considered partially disabled. And the purpose of the partial disabled sort of subsection of disability is to allow a claimant to start to go back to work or to try to go back to work. But don't you have that just under the definition of disability, because the sliding scale of income, obviously if you understand disability to mean you can't perform each one of the functions, you can perhaps perform some of them, less than all, and get some income from it, and then you have the sliding scale. So does partial disability in the separate definition play any separate role at all under your interpretation? Partial disability plays a separate role in that you are basically submitting whatever your income is going to be. There are multiple purposes going on here, actually. The first is to encourage people to return to work part-time if they can, or return to work at maybe a lower paying job if they can, and they will still be able to receive whatever proportion of benefit would be appropriate for their prior job, for their prior level of income. So the partial disability provision is to sort of encourage and to allow someone who has been disabled to start to return to work. But the district court was trying to give separate effect to that, which makes sense, because we're not supposed to read out any language of the contract. It says disability and partial disability are mutually exclusive, and then for partial disability there are different tests, and that certainly seemed a reasonable interpretation of the contract, because otherwise partial disability has no separate effect at all. Partial disability, it has a separate effect. I think it's largely to do with the amount of benefits, with whether a full benefit is being paid, whether a partial benefit is being paid. Under the concept of full initial disability, you can't work at all. Can you show me what difference it would make if partial disability was out? Can you point to a provision that would have a different effect if that language was out? If that language was not? Right. If there was no definition of partial disability and no, the benefits section didn't have that section, partial disability. If I understand your question correctly, Your Honor, and I'm looking at the summary plan description, which was attached as Exhibit A to the complaint, and under the heading disability, which is LC-BEN1, it talks about when disability benefits become payable, and then it says when do disability benefits for partial disability become payable, and the disability benefits for partial disability become payable when the plan administrator receives proof of partial disability within 31 days of the end of a period during which a disability benefit was received. Well, then why, if partial disability is something different, then why does the proof section, which doesn't refer to partial disability, apply? The proof section doesn't refer to partial disability or disability that refers to disability. Right. So if they're two different things, I mean, if they actually are two different elements, you get disability or you get partial disability, that's what the district court analyzed, then why does the proof section, which doesn't use the term partial disability, apply? The proof section doesn't specify that it's pertaining only to partial disability or that it's pertaining only to disability. Well, it uses the word disability, right? It talks about giving proof of continued disability. But if partial disability is different, I mean, that's what the district court was saying. You've got a defined term, partial disability, you've got a separate concept of partial disability, and so why should proof of disability apply to proof of partial disability? The district court, in its construction, sort of read the word total disability, or total into the definition of disability, and then created two separate, you know, there's a total disability benefit and there's a partial disability benefit. Isn't that what you were just saying, though, that they're two separate things? There is one benefit, it is a disability benefit. I am having a lot of trouble with what you're saying. Let me explain why. Factually and in terms of the contract language, I'm having trouble. The reason I'm having trouble factually is when I used to do PI law on both sides, a lot of the doctors were retired military doctors, and they used the VA system. What they would do is they'd treat for a while, and then when they thought there was nothing more they could do for the person, they'd give them a rating, kind of like a veteran's rating, 20% permanent partial disability. They'd never see them again. It was just a rating, 20% permanent partial disability or whatever it was, and that was the basis for the opinion that they would subsequently give on the stand. There was no further medical consultation or treatment. Now, when I look at the policy, it looks consistent with that practice. I look at these pages that have funny numbers. In type it says L-Ben-1, and in the date stamp it says UAPO-011. And in the top half of the page it says disability, and the bottom half partial disability. It's not written the way I would write it if I were working for the insurance company on this one. Under disability it says he'll be paid if he gives proof of disability and regular attendance of a physician. But under partial disability it doesn't say regular attendance of a physician. It doesn't say anything about it. Now, that would be consistent with the kind of doctors that I just described, who at the end of treatment say 20% permanent partial disability, goodbye. And then when I look under proof at UAPO-020, it says proof of continued disability and regular attendance of a physician must be given within 30 days of the request for the proof. But when I look back at the benefits page, regular attendance of a physician is explicit for disability, but not mentioned for partial disability. Now, as I say, I wouldn't write it that way if I were working for the insurance company. I'd want it just the way you say, have a doctor send me a letter once a year. But that's the way they wrote it. And I'm wondering why I shouldn't infer a negative pregnant. They express under disability that they want regular attendance of a physician. They don't express it under partial disability. It's not entirely absurd, because a lot of doctors have the practice of rating a patient for permanent partial disability and never seeing them again. That seems to be the way Judge Shub read this thing, and I don't quite understand why that's wrong. Your Honor, if I could focus just on that Elsie Benn one, under the heading disability, when the question is posed, when do disability benefits for partial disability become payable? And the response is when we receive proof that you're partially disabled within 31 days of the end of basically receiving a prior benefit payment. That definition would mean you have to send something within 31 days of, I guess, the end of your permanent disability. Do we send anything within 31 days? Your Honor, he didn't send anything within 31 days here, but the term here is disability benefits, and the disability benefit is the term that covers all benefits. There is no partial disability benefit. So you say, but I think that's pretty arguable. Now, let's suppose that it means what Judge Shub thought it meant. Disability means total disability. That would narrow the question down. Did he send something within 31 days of when his permanent disability ended? No, Your Honor. So even if you lose on all of the policy interpretation questions, you'd still win because he didn't send something within 31 days. Correct, Your Honor. Do you need any more than that? I think, Your Honor, there is also the requirement that, you know, that proof cannot be given if it's not given within one year. And there is also this requirement that proof be given within 31 days of any, you know, disability benefit. But I think you're correct, actually, that, you know, if we're going to waive that. I mean, they had continuing ongoing discussions with NISBEC about whether he was disabled or partially disabled or whatever, and continued to they reversed the denial of benefits, then they asked for more evidence, and then they told him it was closing the file, and then they considered his appeal. So the 31-day thing seems to have been waived long gone by UNAM as a basis for denying the claim. Your Honor, I see that my time is almost up, but if I might briefly answer the question. Yes, right away. Okay. UNAM requested on multiple occasions that he provide proof of partial disability or proof of disability or some kind of proof. The claimant here claimed that he, because he was partial disability, claiming partial disability, he did not have to provide proof. UNAM then denied benefits after a couple more, you know, back and forths and closed the claim. So I don't think that there is any waiver, if that answers your question. Thank you, counsel. Good morning. Thank you. Please, the Court. I'm Douglas DeVries on behalf of Pelley Newspeck. Counsel, you know from my questions to your adversary that I can see the logic of your side of the argument. Yes. And you also know that I question whether it makes any sense that you should be able to get paid forever without ever showing there's anything wrong with you. Not much of a burden to just get a letter from a doctor once a year that says, yep, both those legs are still cut off, or whatever the disability is. Why wouldn't you read something like that in? Read in the requirement of some kind of proof. Okay. If I may, let's start. It looks like they want some kind of proof, because they say when proof is received that an insured is partially disabled. Right. And I think the proof that is described under the definition and the explanation of partial disability is the proof that you are working part-time and that you are experiencing income, whatever that income may be. If that income rises to 80 percent or more of your predisability earnings, you're not entitled to a partial disability benefit, and therefore you'd have to have a total. Actually, I would have thought it was different from the definition of partial disability on the previous page. You'd have to prove that you're unable to perform all the material duties. Well, why would they dispense with proof on that? I'm sorry? Why would they dispense with proof? Well, it's not a matter of dispensing with proof. If I may, the way I believe this works is as the definition on the page you cited, 011, you can never start out being partially disabled. You have to start out with a total disability. Partial disability is also referred to in policies as residual disability. And what this policy says on tab 7, page 011, partial disability is only after the end of a period of, quote, disability or total disability. Right. But they're interpreting disability as not being total disability. They're saying that you can't perform each of the material duties of your regular occupation, meaning you can perform some of them. There's just one of them you can't perform. Right. And the problem with that is this is, as I think Judge Shub concluded, this is a poorly drafted document in the sense that they are trying to say now, or saying to Mr. Niesbeck, that there is only one benefit. Well, that's not the case. Disability, their subset argument is that they styled what would typically be called total disability as, quote, disability. And then they accepted from disability and all the requirements related to disability partial disability. I think we've been talking across purposes to some extent. Let me clarify what my concern is. When I look at 011, it says, and this is accepting your proposition that disability means total disability. It says when proof is received that an insured is partially disabled within 31 days of the end of a period during which he received disability. So assuming that you're correct, partial disability and disability are different, this is a residue after your total disability runs out. Then I want to know, well, what proof do you mean? Well, I look back at the definition of partial disability at 009, and the definition is proof that he's unable to perform all the material duties of his regular occupation, but he's performing at least one of them, and he's earning at least 20 percent less. That means if he's not performing any of them and he's not earning anything, I guess he's still totally disabled, or else he's fine and decided to retire. But if he's unable to perform, the way you distinguish the person who's just decided he doesn't feel like working anymore from the person who's partially disabled is an inability to perform all the material duties of his occupation, resulting from the injury or sickness that caused the disability. So why shouldn't he be required to prove that, even though he does not have to prove regular attendance of a physician? Because, again, it's the way they worded this. I'm looking at the wording. Show me how to read the wording your way. He had been proving the inability to work in his regular occupation for many, many years, and they had been paying him total disability benefits for those years based on that proof. We're together so far, but I still want to see how you read the words to mean you don't need any proof at all once it's partial. Okay. And I don't read them that way, and I don't think Judge Shub in his opinion says that. If you look at, again, on tab seven there, page 011 in the policy, and also there's a corresponding section under tab one in the benefits of the evidence of coverage. Be sure to tie it in with 009, 009, the definition of partial disability. Right. And I'm saying that if you go back to 0011, what it says is with respect to the regular attendance of a physician, they're misapplying the term to the facts of this case, because what it says is when the company receives. . . Wait a minute. I don't think you heard me. I'm sorry. I'm fine with that. Oh, okay. Well, I'm accepting your argument for purposes of discussion that he does not need regular attendance of a physician for partial disability. My concern is why doesn't he nevertheless need proof that he's unable to perform all the material duties of his regular occupation on account of the injury or sickness that caused his previous total disability? Well, because he is coming off total disability. He has proved his inability, and he says to the company, in fact, he says on May 1, 1997. No, you don't necessarily have a partial disability when total disability ends. For example, suppose you go in for surgery. No way you can go to your law office and work while you're in the hospital getting cut open or for a period of time thereafter. Your doctor is going to tell you to do nothing for a month. And then, so you're totally disabled. But then after that, you may be not disabled at all. It can't be assumed that you're partially disabled. I understand that. So what I'm saying is that at the outset of partial disability, you have to be coming off total disability. Then on an ongoing basis, they could have put in the policy of requiring a continuing proof that would have related to the necessity of care. But instead what they did, and they had, and Judge Shub referenced this, they had a complete authorization to get whatever medical records, whatever activity records, they could field interview them, field investigate them, including employment. They could have them examined by doctors. It's his burden. It's his burden, I think, to show that he's partially disabled. Did he put in any proof that he was partially disabled? He put in the proof of his activities, and he submitted the interviews. All that shows is he's not working. He's not doing anything. He was not seeing a doctor on a regular basis in the sense that he was doing it every month. That's okay. It would be fine if he had a letter from a doctor saying, I've seen this guy, he's disabled, I don't see him regularly because there's nothing I can do for him. Part of the problem here, Your Honor, in following this is when he wanted to go on partial disability, they denied him his claim. This is in Apelli's brief starting at page 17. Did he ever send in any proof, I am partially disabled because of my injury or sickness that previously caused my total disability? Here is the doctor's explanation of why I'm partially disabled. Yes, he did. Give me the cite. He sent in going forward from 1997. He announced his intention in May of 1997, and then he had a functional capacity evaluation in July of that year, 97. This is all in the record. That's at 1340. Oh, I'm sorry, tab 31. And while this was happening, you have to understand, no benefits were being paid. They had denied his benefits completely. I'm not asking about that. Okay, so. I'm not asking if they're nice folks. No, no, no. I just want to know if they're, and I'm not asking whether he wasn't working. I know he wasn't working. Well, what I'm asking is benefits, then they're not requiring proof of anything. Well, what I'm asking is, well, if he's not disabled at all, they don't have to pay him. If he just says, you know, I don't like working. I'd rather just not work. A lot of people feel that way. You don't get partial disability. Yeah. Did he ever prove he was disabled, partially? I'm looking for the, I don't think he was ever back on claim, to tell you the truth, because most of this happened under remand. I think the lawsuit, and maybe that's where we're getting confused. They weren't, they told him in December that they wanted proof of, that's when they told him they wanted the proof of the ongoing disability. And his chiropractor certified that he was disabled on January 4, 2000, which was one of the ones I was thinking of. I believe there's another one. That's tab 28. This was after he had already brought an action right in district court. Based on my notes, it looks like Unum paid benefits from 90 to the end of 95, and then in 96, the beginning of 96, they requested medical information, and your client didn't send him any. He announced his intention to claim partial disability on May 1 of 1997. That's tab 34. Now, the chiropractor's certification is that he's permanently disabled. Right. So does that prove he's partially disabled? Well, if he can't work full time in an occupation, then what the partial disability provision says is if you can work part time in any occupation, then you can qualify for partial disability benefits. He chose to go on a partial disability because it was suggested by the company, which is in the record, and he had gone through Pride Industries Vocational Rehabilitation. And he said, I want to, he wrote him a note saying, look, I want to try to work part time. And that's what started this. Then they denied him benefits in short order. Did he have anything but a chiropractor's report after he sued that showed that he was partially, that he was unable to perform all the material duties of his regular occupation on a full-time basis because of injury or sickness that caused his disability, his original disability? Right. And in between, the record is very confused because in between there were. I'm asking for help. You give me the site. See, there weren't benefits being paid for a lot of these. I don't care if there are benefits or not. He's suing for the benefits. We can say, give him the money. So it doesn't matter whether they're being paid. What matters is what the proof is. Yeah. And I don't see in the record during the period of time that they were not paying benefits and during the time they were denying him benefits that there was ongoing submission of proof, which is an interval, as I said, between 97 and 99. Can I get back for the interpretation of the contract? Yes. You were indicating that the partial disability and disability are distinct terms. And in reading through the contract, sometimes that causes problems. And one of them is in the termination section, where they say that disability benefits will cease on the earliest of the date the insured is no longer disabled. So it sounds like, and doesn't use the word partially disabled, it sounds like at the point where the person is no longer totally disabled, then the disability benefits stop. Unless you read disabled to include partially disabled, that section doesn't make sense. And there's some other sections like that as well. What do I do with those in the contract? I think if you're not disabled in any way, whether it's, quote, disability or, quote, partial disability, then you're not going to get benefits. But that's not a proof. But you're saying disabled includes partially disabled. I mean, I'm trying to figure out how to read this contract. And I can read the word disabled, as Unum wants me to, to include the concept of partially disabled, or I can read those words as being terms of art in the contract and meaning two distinct things. But if I read them as meaning two distinct things, then I have a problem with the termination provision. Yes, the termination provision, which we've discussed in the briefs, only uses the one term. Right. And but it's talking about that's in relation to termination of the insurance as a whole. Well, no, this is disability benefits. There's a separate section about termination of insurance as a whole. This is disability benefits in Section 4, benefits section. I'm sorry. You're talking about UAPO 014. Is that right? It's talking about you're referring to the termination provision that's on. Yeah, on 014. Thank you. LBIN 4. And you've got a problem there because. Yeah, where it says disability. On the earliest of the data. Okay, I see. Yeah, the one you're referring to is that the date the insured is no longer disabled, there's death, a maximum benefit period, or a current earnings exceed 80 percent. All that subsection 4, the current earnings exceed 80 percent, that sounds like partial disability. Exactly. And what I'm saying is that provision applies to all the benefits. Right. But then on the earliest of the number one would say the date the insured is no longer disabled. Either that means once you're no longer disabled, even if you might be partially disabled, the benefits terminate, or we have to read the word disabled as including partially disabled, disabled or partially disabled. And here again the title is termination of, quote, disability benefits, which they didn't set out separately as total disability benefits. They called it, quote, disability benefits. It just adds to the confusion and the need to try to figure out the interpretation, which in this case, when you look at the other provisions, results in an ambiguity that I believe they tried to take advantage of to terminate benefits. Thank you very much. Thank you, counsel. I think we ran over, but take 30 seconds or a minute anyway. Thank you, Your Honor. I'd just like to point to one additional part of the policy, and that is under the definitions. There is a definition of disability benefit. There is no separate definition of partial disability benefit. So that definition of disability benefit then has to be read into the provision about partial disability and when you have to show proof of partial disability at the end of 31 days after receiving a disability benefit. If we read the partial disability as being a completely separate idea, then there is no benefit for partial disability. How do you deal with that letter from the chiropractor in 2000 that he's totally disabled? The letter from the chiropractor in 2000 conflicted with the fact that he had claimed to be working for three years, that he had claimed to be at least working part-time for three years. So that letter, you know, the weight of that letter is somewhat lessened by the facts of the case. Wasn't his work just a little bit of gambling and occasionally selling off a computer part? His work, certainly once we got to 2000, 2001, 2002, it seemed like he was just making a single computer sale a month for boxes of scrap parts. Kind of like if I sold my old TRS-80. Precisely, Your Honor. In 97, 98, 99. I don't know if most of us would call that work. I agree, Your Honor. In 97, 98, 99, we did not get receipts from whatever he was doing, but we got a report of income ranging from $7,000 to $14,000 a year, which indicates that he was doing a little bit more in some field than just selling scrap computer parts. So it did appear that he was making some income in those years. Thank you. Thank you, Your Honors. Nesbeck v. Uman is submitted. And that's it for this morning. We're adjourned for the day.
judges: Noonan, Kleinfeld, Ikuta